Good morning, Your Honors. My name is Joseph Fleming. May it please the Court, I am here to represent Mr. Adekunle Balogun today. And on behalf of my client, I'd like to thank you for the opportunity to appear here. If I could, please, I'd like to reserve a couple minutes for rebuttal at the conclusion of my argument. As you know, Mr. Balogun is appealing the denial of relief in immigration proceedings before both an immigration judge and the Board of Immigration Appeals. And in this case, the government has charged Mr. Balogun as being removable on essentially two grounds. The first is that he was never admitted into the United States. And the second is that the offense for which he was convicted in the Northern District of Illinois constitutes a crime involving moral turpitude. And naturally, we contest both of those points and are looking forward to the opportunity to explain ourselves here today. At the outset, I'd like to point out that the immigration judge himself rightly observed in the immigration proceedings that because Mr. Balogun's wife, Melva Balogun, who is a U.S. citizen, applied for and was awarded a Form I-130 relative immigrant visa petition with her husband as beneficiary, and I quote here, this is what the immigration judge said, if the respondent was admitted, he would have qualified for Section 245A adjustment of status. So this question of whether or not Mr. Balogun was admitted into the United States weighs heavy here, and for the reasons I can't explain further, we believe that he was. Let's look at this admitted. Doesn't that require some affirmative action by the United States government? Well, my understanding of the controlling case here is the Board of Immigration Appeals' own decision in a case called Matter of Atagian. And I apologize, my Spanish is not very strong. But in that case, what the Board of Immigration Appeals said was an alien who presents herself and makes no knowing false claim of citizenship is inspected, even though she volunteers no information and is asked no questions. So that doesn't say to me that it does require any particular affirmative action on the part of the immigration officer. And the case goes on to say further that admission occurs when the inspecting officer communicates to the alien that in that case she is not inadmissible, and that's accomplished by permitting her to pass through the port of entry. And the facts of that case are that the Petitioner was sitting in the back of the car, remained silent. The car drives up. The driver is asked questions. The Petitioner sits mute in the back seat, is not asked any questions, does not respond to any questions, and is permitted to pass through. The Board of Immigration Appeals determined that that is sufficient to meet the standard of inspected and admitted. And what we argue here is that Mr. Balligan's case is materially identical. Mr. Balligan also sits in the back of the car. He's asked no questions, and he offers no answers. The distinction, if there is any, is that Mr. Balligan is asleep. But we think that that distinction is without a difference in this case. Did the I.J. accept that description as factually correct? Yes. In fact, the immigration judge, to his credit, I want to point out that I felt that he did an excellent job in developing the record. And while I will quibble with a lot of the decision that was ultimately rendered is not being adequate, he did have an entire section entitled, Credibility, with respect to my client, Mr. Balligan. And he decided summarily, and I quote again, On the whole, the Respondent testified in a credible fashion. And under this Court's precedent in Beltran-Zavala v. INS, my understanding is that once credibility has been accorded to the Petitioner's testimony, corroborative evidence is not required. So here Mr. Balligan steadfastly maintains, I was in the back of the car. This was New Year's Eve on 1990, turning into 1991. In the very early hours of January 1st, 1991, he had been out. He had just come from Africa via Spain into Mexico. He was out with some friends. He's in the back of the car. He falls asleep. It seems very plausible to me that in light of the time of day, in light of the day of the year, this holiday, that Mr. Balligan was just passed through by the immigration officer. Let's talk about the criminal offense. Okay. What did he plead guilty to? Well, he was convicted of having, possessing unauthorized access devices, which are credit cards. And he pled guilty to that count, which is the possession of unauthorized credit card devices. At issue in this case is the question of the order to pay restitution. He was ordered to pay restitution. How much? $97,000. And has he? He has begun to make payments. He was incarcerated immediately and was unable to, and then was subsequently put into custody with the immigration officer. So he's begun to make payments on the $97,000 in restitution. That's right. Has he ever contended anywhere that that amount was improperly arrived at? No. And I think that he concedes that that's, at least for the purposes of the count to which he pled guilty, an accurate statement of victim loss. No. But he maintains. This is a gift? No. He maintains that he applied for these credit cards and that he's given the credit and that he spent the money, as any of us would when we are, when we apply for and get credit cards and spend the money, and that we owe that money and that just as I don't incur any loss or to the, or rather just as the credit card incurs no loss when they lend me the money, provided I'm planning on paying them back, which is what Mr. Balligan intended to do. And, in fact, I've submitted for supplement of the record some checks, canceled checks that Mr. Balligan has that shows that he had been making payments up until the time of his arrest. And I apologize for the delay in these proceedings to submit those to the Court, but he's only just recently been released on bond and was able to contact those institutions. But to get back to your point on what the restitution question, it's incredibly important in this case, because the question of what is restitution, what is the amount of loss, who is a victim, I think doesn't necessarily apply here. It's not as though Mr. Balligan went to the bank and stole $97,000. He went to credit card companies, or credit card companies more appropriately came to him, gave him preauthorized applications. He fills them out. He starts using false names. I don't think that he ever contends that he used false names, but he does admit that he didn't use a proper Social Security number. And so he's using false Social Security numbers. That's right. And he ultimately pleads guilty to possessing those. He wasn't really entitled to. Can I finish my question? I apologize. And the Court determines that he should pay $97,000 in restitution. Now, I take it you did not represent him in that proceeding. I did not. Okay. But you are aware that the rules and procedures involving a sentence, including restitution, allow the defendant to contest the amount and say that doesn't accurately reflect the loss in this case, et cetera. And that was not done here. Not to my knowledge. Judge, at no time in the criminal proceeding or at any time after the judgment was entered has your client ever said that $97,000 does not accurately reflect victim loss. He said it in this proceeding, but he never said it in the criminal proceeding, right? Not to my knowledge. Okay. So what do we make of that? I think that we what we're to make of this is that there's a distinction here between a person's understanding of what amount of loss is. You know, Mr. Balligan is in a criminal proceeding. He's concerned about the charges that are against him and what sort of time might be sentenced he might be sentenced to. And when someone says, do you acknowledge that you owe these credit card companies this money, $97,000, my suspicion is he says yes. English is not his first language. He comes to this country and someone says, you owe them $97,000, yes? Okay. We're going to put that down as restitution. I think that he could reasonably think, well, that's what I owe them. And they lost that money. I guess they lost that money, not knowing that this would necessarily come up in his immigration proceedings. And that was the reason. When he was arrested, he had 16 credit cards? 15, I think. His charge was 15, but I think he had 16. And he estimated that at one time he had 30 credit cards? Four more. So I'll proceed. There's an issue here as to whether or not this offense constitutes a crime of moral turpitude, and that's relevant for a number of purposes here. But at the outset, let me point out that the government, neither the immigration appeals, nor the immigration appeals are in charge of moral turpitude in their decisions. And it's my understanding from this Court's precedent in Toro Romero v. Ashcroft that the government has to show by clear and convincing evidence that Mr. Balligan is deportable on that specific ground. Furthermore, the Board of Immigration Appeals has no discretion to affirm a decision that was never made, which is from Murillo-Salmoron v. INS. He agreed that his plea agreement accurately stated his conduct? No. We contest that because we don't. Did he contest it in the criminal proceeding? I don't think so. Okay. And doesn't the plea agreement say that he used different names, different dates of births, nonexistent employer information and different parents' names in fraudulently applying and obtaining two different Social Security numbers? The plea agreement? Yes. Yes. It does. But what – and at any time in the criminal proceeding, did he dispute that? Not to my knowledge. But again, here we don't – with respect to the plea agreement, there's another liability facing the plea agreement itself, which is that we don't have a copy of the signed plea agreement in the administrative records. But he admitted on the record that it was the – during the criminal proceeding that it was accurate, didn't he? He had to convince the court to accept his plea. But we don't know necessarily what the contents are. In the absence of someone, you know, having something before them that they read and sign and understand, and he – there's, you know, a dialogue with the judge, I think that there's some concern as to, you know, he's trying to be accommodating, I think, in the proceedings so as to receive a lenient sentence. Did you want to save some time for rebuttal? If I could, please. Thank you. Thank you. We'll hear from the government at this time. Mr. Hunolt. May it please the Court. I'm James Hunolt, representing the Respondent in this case. We believe that the Court must first address the issue of whether the offense here is an aggravated felony or a crime involving moral turpitude, because the Court's opinion is that the remaining issues may fall if the Court finds that there was an aggravated felony, if this was an aggravated felony offense, or a crime involving moral turpitude. Regarding the crime involving moral turpitude, counsel urged that there was never a finding on that issue. That's incorrect. The order of the immigration judge on the last page finds that he may – that the petitioner shall be removed based on the charges contained in the I-261, the additional charge of removability, which alleged that he was – is removable for a crime involving moral turpitude. So there was an express finding that he is removable on that ground. And the immigration judge was correct in concluding that this is a crime involving moral turpitude. The credit card statute under which the petitioner was convicted requires fraud as an element. So fraud has been considered fundamentally a crime involving moral turpitude. Did the petitioner raise this issue before the VIA? Your Honor, I believe he did. I believe so, but I am not certain on this issue. I'm sorry. I'm sorry, Your Honor. On this issue, he absolutely did not raise it before the VIA. That was my understanding. I'm sorry. He filed like a 50-page brief. That he did, Your Honor. To the VIA, and it does not mention moral turpitude, whether this crime involved moral turpitude. That's correct, Your Honor. We believe that this Court need not go further. He hasn't exhausted his remedies on the finding that he is removable for a crime involving moral turpitude. And at that point, the petitioner for review should be dismissed. Was it adequate for the IJ to simply refer to the other document rather than saying, and I find that this is a crime of moral turpitude? I'm sorry, Your Honor. I don't understand your reference to referring to the other document. Oh, in the order. I'm sorry. Yes, absolutely, Your Honor. If a court says that it is common, in fact, for immigration judges to say that I find the alien subject to removal on the ground alleged in the notice to appear, this I-261 is a supplement to the notice to appear. It contained only one charge of removability. It leaves no doubt as to what he is finding. You have the notice to appear right there. I have it in my briefcase. I could have it in a couple of seconds. Would you like me to pull it out? I'd like you to read that part, because I think that's critical to the case. Can you tell us when you find it, were the record reference? I'm sorry. I assume you're referring to the additional charge, the I-261. The notice to appear alleged that he is removable because he was not admitted or paroled. The additional charge alleged at page 916 that he is removable on the grounds that he was convicted of a crime involving crimes. Yes. Now, was that additional document referred to by the I.J.? What's the I.J. say exactly? The I.J. said exactly, So, Ted, it references it, okay? I'm sorry. And what is the wording exactly in the 916? It inserts it as if it was inserting in the notice to appear. It's as if it was inserting in the notice to appear that under 212A to a small I, large I, of the Immigration and Nationality Act as amended, in that you are an alien who has been convicted or who admits having committed or who admits committing acts which constitute the essential elements of a crime involving moral turpitude, parentheses, other than a purely political offense, closed parentheses, or an attempt or conspiracy to commit such a crime. It then goes on and recites the date of the conviction and the basis in citing the statute of the conviction. We believe that the immigration judge was correct in finding that it was a crime involving moral turpitude. Intent to defraud is an element that has been considered as for decades, if not centuries, to be fundamentally an aspect of moral turpitude. The reliance that Petitioner places in his brief on the Beltran-Torado decision of this Court simply is irrelevant. We've explained in our brief that that did not involve a fraudulent offense. The decision did not mention fraud except to say that fraud would be different. Even if the immigration judge is wrong, and we do not by any means suggest that he was in concluding that the crime was one of moral turpitude, it also is an aggravated felony offense. That, too, if the Court finds that he was an alien who was convicted of an aggravated felony offense, that, too, would leave the Court with no option but to dismiss the petition for review. He doesn't dispute the conviction at all. And it is an aggravated felony if it involves fraud with a loss to the victim of more than $10,000. Doesn't the — as Your Honor, Judge Hoggins noted, the plea agreement makes plain that the loss to the victim — victims was more than $10,000. Counsel raises the issue that it was not signed. He did not object at trial to that or dispute in any way at the hearing that that was the plea agreement in which he entered. He did not raise that before the board. Therefore, he has not — he both raised for the first time the fact that it was unsigned. Had it been raised at trial, perhaps there would have been some effort by the trial attorney at least to give him the option to seek a signed copy. But where he not only does not object, but does not dispute in any way the accuracy or the validity of that plea agreement that it was the plea agreement that he entered into, the fact that it is unsigned simply is not a basis to reject it. In any event, the judgment of the district court of the Eastern District of Illinois shows that the loss to the victims was over $93,000. That, as I read the record, is not disputed by Petitioner. That is, there are explanations that he raises and excuses, but that the loss to the victim itself, we do not believe, as the record shows, that he disputed that. Okay. I think we understand your argument. Thank you for your argument. We'll hear a rebuttal at this time. Why don't you start by talking about the brief that was filed before the BIA. Does it mention this issue? The issue of the moral turpitude? Yes. No, not to my knowledge. Then how can we, as a district court of the Eastern District of Illinois, do what you're asking us to do when it wasn't even raised to the board? I think that it would seem to make sense to me that the board of immigration or, sorry, that the immigration judge in deciding on these two charges in a 22-page opinion would make some reference to 50 percent of the charges that are made against him. But for this final sentence, which counsel has pointed out here, which again doesn't even mention moral turpitude, there's no weighing of any evidence with respect to this point. It's just concluded without any determination whatsoever. I'm waiting for you to explain to the panel how it is we could review something about the board of immigration appeals that wasn't even raised to them, not even mentioned to them. Well, it seems to me that if we review for legal error what they do as an administrative and adjudicative agency, how can we review something they did not do? Just to make an analogy to criminal law, if somebody charges you with a criminal law, criminal law analogies aren't going to help you here, counsel. You have some case law that says we can do that? I don't. I don't. But I can be happy to try to brief that issue separately. Anything else? Yes. With my remaining time, I would like to – counsel mentioned one of the cases that we rely on called Beltran-Torado for the prospect that fraud doesn't necessarily constitute a crime involving moral turpitude. In Beltran-Torado, the Petitioner took somebody else's Social Security number and used it for 19 years, and this Court said that that does not constitute a crime involving moral turpitude. And in briefing, counsel points out that Congress intended to make an exception, and here is the exception that is cited directly in the opinion. This exception applies only to those individuals who use a false Social Security number to engage in otherwise lawful conduct. Here, Mr. Balligan got credit cards and otherwise lawful conduct. So we think that that is persuasive in our case. And with respect to the question of the aggravated felony, we vigorously dispute that. I notice that my time is up. Would you like to hear anything further on that? I think we're fully informed by virtue of your briefs and your arguments. We thank you for your argument, thank both sides for their argument, and the case just argued will be submitted for decision.
judges: Lay , B. Fletcher, Hawkins